IN THE UNITED STATES DISTRICT COURT, DISTRICT OF KANSAS

| | |
|---|---|
| PHILLIP MICHAEL ERAVI, CHANSI LONG, AND LAWRENCE ACCOUNTABILITY, LLC | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>)<br>) |
| VS. | ) Case No.<br>)<br>) |
| THE CITY OF LAWRENCE, KANSAS, CICELY THORNTON, RYAN ROBINSON, AND SKYLAR RICHARDSON | )<br>)<br>)<br>) |
| Defendants. | ) |

## COMPLAINT

COMES NOW, Phillip Michael Eravi, Chansi Long, and Lawrence Accountability, LLC, by and through their attorney, Joseph T. Welsh, and makes complaint against the City of Lawrence, Kansas for violation of their constitutional rights under the color of state law. In support thereof, Phillip Michael Eravi, Chansi Long and Lawrence Accountability, LLC, state to the Court the following:

**I.    PARTIES, JURISDICTION AND VENUE**

1. Phillip Michael Eravi ("Michael") is a resident of Douglas County, Kansas and he resides within the City of Lawrence, Kansas.

2. Chansi Long ("Chansi") is a resident of Douglas County, Kansas and resides within the City of Lawerence, Kansas.

3. Lawrence Accountability, LLC ("Lawrence Accountability") is a limited liability company in good standing in the State of Kansas.

4. City of Lawrence, Kansas ("City") is and was at all times relevant hereto, a municipal corporation within the State of Kansas.

1

5. Sergeant Ryan Robinson ("Sergeant Robinson") is a police officer employed by City, and upon good faith and belief is a resident of the State of Kansas.

6. Cicely Thornton ("Thornton") is employed by City as a Homeless Program Specialist, and upon good faith and belief is a resident of the State of Kansas.

7. Officer Skylar Richardson ("Officer Richardson") is employed by City, and upon good faith and belief is a resident of the State of Kansas.

8. The Court has federal subject matter jurisdiction over this matter pursuant to 42 U.S.C. § 1983.

9. Venue is proper pursuant to 28 U.S.C. § 1391 as substantially all of the acts giving rise to the claims set forth in this Complaint occurred in Douglas County, Kansas, and upon good faith and belief, the Defendants are residents of the State of Kansas.

10. There is no requirement under federal law that Michael, Chansi and Lawrence Accountability exhaust any administrative remedies prior to filing a complaint pursuant to 42 U.S.C. § 1983 claims.

## II. FACTS

### A. Michael and Lawrence Accountability.

11. Michael started Lawrence Accountability as a YouTube channel on May 14, 2021.

12. Lawrence Accountability was operated as a sole proprietorship by Michael from May 14, 2021 to February 6, 2023.

13. On February 6, 2023, Michael organized Lawrence Accountability as a single member limited liability company organized in the State of Kansas.

14. Lawrence Accountability does not employ any employees and the only individual involved in its operations is Michael.

15. Lawrence Accountability's purpose is to post videos to its YouTube channel that point out to City and the residents of Lawrence, Kansas what it believes are failures by City to hold its police officers, employees and elected officials accountable.  This is why the name of the YouTube channel, and of the company itself, was chosen.

16. Not surprisingly, most of the videos Lawrence Accountability posts to the Lawrence Accountability channel are critical of City, its police officers, its policies, its executive leadership, elected leaders and other City personnel.

17. As of March 24, 2023, there were three hundred four (304) videos posted by Michael and Lawrence Accountability to the Lawrence Accountability YouTube channel.

18. In the Fall of 2022, Michael learned that City was trying to close a homeless encampment behind Johnny's Tavern on 100 North 1st Street, Lawrence, Kansas.

19. Michael began to visit at least three homeless encampments within the City: Bircham Park encampment, Amtrack encampment and the North Lawrence encampment.

20. As a result of these visits, Michael determined the needs that he believed the homeless had that were not being met.

21. The most pressing issue to Michael was that the homeless lacked the ability to obtain or transport a fuel source to provide heat within the homeless encampments as temperatures dropped during the winter season, and the City had made no effort to provide a heat source to the homeless.

22. Lawrence Accountability began a fundraising campaign to provide propane to the homeless encampments, while Michael volunteered his time and the cost of distribution to

Lawrence Accountability's effort. Michael also made up any shortfalls in donations, if necessary, totaling several hundred dollars.

23. As a result of these efforts, Michael met and became familiar with Jennifer Wolsey ("Wolsey"), former Homeless Programs Coordinator for the City.

24. Michael and Lawrence Accountability often coordinated relief efforts for the homeless encampments with Wolsey and other homeless advocates.

25. Since it started covering the homeless issue within the City, Lawrence Accountability had posted twenty-one (21) videos to its YouTube channel that raised issues with the homeless encampments and how City has handled the issue.

26. The number of viewers of a video posted to Lawrence Accountability varies, with one video attracting over One Hundred Thousand (100,000+) views, while others attract approximately Eight Hundred (800) to Nine Hundred (900) views. On average, a typical video currently attracts approximately two thousand (2,000) to three thousand (3,000) views.

27. Lawrence Accountability is a YouTube partner that receives ad revenue from advertisers for the videos it posts to its YouTube channel.

**B.     Chansi.**

28. At all relevant times hereto, Chansi was a noted reporter who was employed by the Lawerence Times and had an extensive history of reporting on the homeless encampments in Lawrence that were critical of City and its employees.

29. Chansi had provided news coverage of the North Lawrence homeless encampment since September 2022 when it first opened.

30. Much of that coverage was critical of City's handling of the homeless and the homeless encampment.

4

31. In December 2022, Chansi had written articles critical of City's attempts to close the North Lawrence homeless encampment.

32. Chansi's coverage of City's attempts to close the North Lawrence homeless encampment created a public backlash that caused City to reverse its decision to close the North Lawrence homeless encampment.

33. Chansi had also published a story about City relying upon unpaid labor provided by at least one camp resident, Jennifer Adams, to City.

34. As a result of Chansi's coverage of City's treatment of Jennifer Adams, City was pressured into issuing a check to Jennifer Adams in the amount of $7,500 for her services.

35. Additionally, Chansi had previously provided news coverage of two prior deaths that had occurred in the homeless encampments.

36. Prior to March 2023, City knew that Chansi was a reporter and was acutely aware that she had written articles critical of City, its employees and of its handling of the homeless encampments.

C. **Michael, Lawrence Accountability, and Chansi are restricted from reporting at the North Lawrence Camp and from associating with camp residents.**

1. **March 21, 2023.**

37. On March 21, 2023, Wolsey learned of the death of a homeless resident in the North Lawrence homeless encampment.

38. Wolsey contacted the advocate group that Michael was a part of by group text and requested that he come to the encampment.

5

39. Michael understood Wolsey to be requesting assistance from him to provide aid and comfort to grieving individuals living in the encampment as well as to report on the events at the homeless encampment.

40. Lawrence Accountability understood Wolsey to be requesting assistance from it in documenting what happened at the homeless encampment and how City was responding, as well as what services, if any, were being provided to the homeless.

41. Michael, acting individually, and as a reporter for Lawrence Accountability, went to the homeless encampment to report on what was happening.

42. Independent of Wolsey contacting Michael, Chansi was contacted by a resident of the homeless camp and advised that she should come to the campsite since a resident had passed away.

43. Chansi understood the homeless resident to be requesting that she come to campsite to document what happened at the homeless encampment and how City was responding, as well as documenting what services, if any, were being provided to the homeless.

44. Chansi, acting individually, and as a reporter for the Lawrence Times, went to the homeless encampment to report on what was happening.

45. While at the homeless encampment, Michael and Chansi began to provide aid and comfort to those grieving the death of the homeless resident.

46. Michael and Chansi also began documenting the conditions at the camp, the services provided by the City and how the homeless residents were coping.  Michael posted a video to Lawerence Accountability's Youtube channel while on scene.

47. City, acting through City's police officers, advised Chansi that she could not be within the homeless encampment and that she needed to leave.

48. City staff were questioned as to why reporter Chansi was being enjoined by City from being within the homeless encampment, and no reason was provided.

49. Insight into why Chansi was enjoined from the homeless encampment may be gained from a review of recorded comments made by Lawrence Community Staff about why Chansi was asked to leave public property, to wit, Ande Johnson, City employee, advised Michael that "There is a time and place for everything. There is not a story to break today."

50. Later Chansi was specifically advised by City that she was being ordered outside the encampment because she needed to do "her reporting outside the barriers."

51. Chansi left the homeless encampment under duress.

52. Shortly thereafter, Sergeant Robinson advised Michael that he "was being trespassed" from the homeless encampment upon orders from Thornton to do so.

53. Sergeant Robinson was accompanied by Officer Prue when directing Michael to leave the encampment.

54. Michael was advised that if he did not leave the encampment that he would be arrested and taken to jail for trespass, "no question about it at all."

55. Michael questioned Sergeant Robinson about the duration of his enjoinment by City from the homeless encampment.

56. Sergeant Robinson advised Michael that his enjoinment from entering the homeless encampment was "permanent, until it is lifted by Cicely Thornton."

57. Michael left the homeless encampment under duress.

**2.      March 23, 2023.**

58. On or about March 23, 2023, Michael returned to the homeless encampment, but did not enter the homeless encampment. He sought clarification about who was enjoined from entering the homeless encampment.

59. Michael was advised by Ron Zagorik that "unauthorized visitors" to the homeless encampment were not allowed.

60. When Michael inquired of Ron Zagorik who was "authorized" and who was "unauthorized," he was advised that it was handled on a discretionary basis by Cicely Thornton.

61. Michael further asked what properties he was enjoined from being present upon, he was advised that Thornton would provide that information when she returned from being out of town.

62. Until 3:51 pm that afternoon, Chansi was enjoined from being within the homeless encampment.

63. At 3:51 p.m. that afternoon, Cameron Dabney verified with Cicely Thornton that Chansi was no longer being enjoined by City from being within the homeless encampment, but Michael still was.

64. Michael never received a reason why he was being enjoined from entering the homeless encampment on March 23, 2023.

D. **Michael is issued a trespassing citation.**

65. Without being provided a reason as to why Michael was enjoined from entering the homeless encampment or which properties he was enjoined from, Michael entered into the homeless encampment on March 27, 2023.

66. Officer Skylar Richardson, Officer Anthony Harvey and Sergeant Ronald Ivener responded to Michael entering the homeless encampment.

67. Upon the authority of Cicely Thornton, Michael was issued a municipal summons for trespassing.

68. The summons was issued by Officer Skylar Richardson.

### E. Dismissal of the trespassing citation.

69. City dismissed the trespass action without prejudice on May 17, 2023.

## IV. CLAIMS

### COUNT I – 1983 VIOLATION OF FIRST AMENDMENT RIGHTS

70. Michael's First Amendment rights include the right to speak, the right to listen, the right to photograph and record, and the right to associate and assemble with other residents of the City of Lawrence.

71. Chansi's First Amendment rights include the right to speak, the right to listen, the right to photograph and record, and the right to associate and assemble with other members of the City of Lawrence.

73. Lawrence Accountability's First Amendment rights include the right to speak, the right to listen, the right to photograph and record, and the right to associate and assemble with other members of the City of Lawrence.

74. At all times stated in the Complaint, City, Cicely Thornton, Ryan Robinson and Skylar Richardson were acting under the color of state law.

75. City, Cicely Thornton, Ryan Robinson and Skylar Richardson violated Michael's right to speak to, listen to, photograph, record, associate and assemble with residents of the homeless encampment.

76. City, Cicely Thornton, Ryan Robinson and Skylar Richardson violated Chansi's right to speak to, listen to, photograph, record, associate and assemble with residents of the homeless encampment.

77. City, Cicely Thornton, Ryan Robinson and Skylar Richardson violated Lawrence Accountability, LLC's right to speak to, listen to, photograph, record, associate and assemble with resident of the homeless encampment.

78. City, Cicely Thornton, Ryan Robinson and Skylar Richardson violated Michael, Chansi and Lawerence Accountability's rights by enjoining them from the homeless camp because they were reporting on the homeless camps.

79. Michael has been damaged by City, Cicely Thornton, Ryan Robinson and Skylar Richardson's unconstitutional actions.

80. Chansi has been damaged by City, Cicely Thornton, Ryan Robinson and Skylar Richardson' unconstitutional actions.

81. Lawrence Accountability, LLC has been damaged by City, Cicely Thornton, Ryan Robinson and Skylar Richardson's unconstitutional actions.

WHEREFORE, Michael, Chansi and Lawrence Accountability, LLC pray that the Court render judgment for Michael, Chansi and Lawrence Accountability, LLC, for compensatory damages, attorney's fees, costs sustained herein, and for such other and further relief as this Court deems just and equitable under the circumstance.

## COUNT II – 1983 ABUSE OF PROCESS

83. City, Cicely Thornton, and Skylar Richardson knew that it was improper to report Michael as trespassing on public property.

84. City, Cicely Thornton, and Skylar Richardson acted to have Michael issued judicial process, the summons, for trespassing to harass and/or cause hardship to Michael to prevent Michael from reporting to the public about the homeless camp and as retaliation for reporting Michael had done regarding City.

85. Michael was damaged by City, Cicely Thornton, and Skylar Richardson 's actions.

WHEREFORE, Michael prays that the Court render judgment for Michael, for compensatory damages, attorney's fees, costs sustained herein, and for such other and further relief as this Court deems just and equitable under the circumstance.

## DEMAND FOR JURY TRIAL

86. Plaintiffs' make demand for a jury trial in Topeka, Kansas.

/s/ Joseph T. Welsh
Joseph T. Welsh #78138
207 S. Inman St.
P.O. Box 606
Sublette, Kansas 67877
(620) 510-5030 – Phone
(620) 510-5029 - Fax
joe@jtwelshlaw.com