UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| PHILLIP MICHAEL ERAVI; CHANSI LONG; and LAWRENCE ACCOUNTABILITY, LLC, <br><br> Plaintiffs, <br><br> vs. <br><br> CITY OF LAWRENCE, KANSAS; CICELY THORNTON: RYAN ROBINSON; and SKYLAR RICHARDSON, <br><br> Defendants. | Case No. 5:23-cv-04109-JAR-GEB |

**MEMORANDUM IN SUPPORT OF DEFENDANTS CITY OF LAWRENCE, KANSAS, CICELY THORNTON, RYAN ROBINSON AND SKYLAR RICHARDSON'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR FAILURE TO STATE A CLAIM**

Plaintiffs seek to hold Defendants, Cicely Thornton, Ryan Robinson and Skylar Richardson (hereinafter, "Individual Defendants") and the City of Lawrence (hereinafter "City") civilly liable pursuant to Section 1983 for violating their First Amendment rights and for Abuse of Process. However, Plaintiffs' Complaint, fails to state a claim upon which this Court may grant relief. There are no factual allegations that state a case of action against the City and the Individual Defendants are protected by qualified immunity. Specifically, the Individual Defendants did not engage in conduct that violated Plaintiffs' First Amendment rights and did not violate a right that was clearly established. For these reasons as detailed below, Plaintiffs' Complaint must be dismissed pursuant to Rule 12(b)(6).

**I.   STATEMENT OF FACTS**

The following are relevant facts from Plaintiffs' Complaint. All facts are not restated herein as they are not necessary for the evaluation of Defendants' Motion to Dismiss. Defendants

4791561

strongly dispute the majority of the facts alleged in the Complaint and if the Motion to Dismiss is denied, Defendants reserve the right to dispute the same through discovery.

Plaintiff Eravi resides in Lawrence, Kansas, and owns and operates Lawrence Accountability, LLC. (Doc. 1, ¶¶ 1, 3). At the time of the events described in the Complaint, Plaintiff Long resided in Lawrence, Kansas and at all relevant times was a reporter for the online newspaper, "The Lawrence Times". (Doc. 1, ¶¶ 2, 28). In September 2022, the City of Lawrence opened the North Lawrence homeless encampment. (Doc. 1, ¶¶ 28-29). Plaintiffs allege that on March 21, 2023, they were contacted about the death of a homeless resident and both went to the encampment. (Doc. 1, ¶¶ 37-44). Upon arrival, Plaintiffs were advised by the City of Lawrence Police Officers that they could not be within the homeless camp and that they needed to leave. (Doc. 1, ¶¶ 47, 50, 52, 53). Despite being advised not to enter the homeless encampment, Plaintiff Eravi entered the homeless camp on March 27, 2023 and was issued a citation for trespassing. (Doc. 1, ¶¶ 65-68). The citation was issued on the authority of Defendant Cicely Thornton and written by Defendant Skylar Richardson. (Doc. 1, ¶¶ 67-68).

**II.     ARGUMENTS AND AUTHORITIES.**

**A.  MOTION TO DISMISS STANDARD**

A Rule 12(b)(6) motion to dismiss challenges the legal sufficiency of the complaint itself. *See MacArthur v. San Juan Cnty.*, 309 F.3d 1216, 1221 (10th Cir. 2002); Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A claim is facially plausible when the well-pled facts, accepted as true and viewed in the plaintiff's favor, "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" under the governing law. *Id.* at

678-79 (explaining that legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not well-pled facts "entitled to the assumption of truth") (internal citation omitted); *see Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1236 (10th Cir. 2013). "Conclusory allegations [ ] have no bearing upon the court's consideration" of a Motion to Dismiss. *Frank v. Kan.Dep't of Agric.*, No. 19-1054-JWB, 2019 WL 2393008, at *3 (D. Kan. 2019) (citing *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007)).

Determining whether a claim survives dismissal is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (internal citation omitted). In making this determination, the Court "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007). "[W]hile Plaintiff is not required to set forth a prima facie case for each element, she is required to set forth plausible claims" animating the elements of her causes of action. *Burnett*, 706 F.3d at 1236 (internal citation omitted). "Pleadings that do not allow for at least a 'reasonable inference' of the legally relevant facts are insufficient." *Id.* (citing *Iqbal,* 556 U.S. at 678). "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Smith v. U.S.*, 561 2.2d 1090, 1103-04 (10th Cir. 2009) (internal citation omitted).

**B.  PLAINTIFFS' COMPLAINT DOES NOT STATE A CLAIM AGAINST THE CITY OF LAWRENCE.**

Plaintiffs' Complaint fails to allege any facts that if true, state a plausible claim against the City of Lawrence.  In a section 1983 action, a political subdivision, like the City of Lawrence, may only be held liable for constitutional violations that result from a policy, custom, or practice of the City. *Monell v. Dep't. of Soc. Servs. of the City of New York*, 436 U.S. 658, 690, 98 S. Ct. 2018,

56 L.Ed.2d 611 (1978). A local government does not answer for the injuries "inflicted solely by its employees or agents," and is not subject to respondeat superior liability. *Id.* at 694. The City of Lawrence is not directly liable for the constitutional torts of its employees. *Finch v. Rapp*, 38 F.4th 1234, 1244 (10th Cir. 2022) (citing *Monell*, 436 U.S. at 694). A municipality "may be held liable under *Monell* if it executes an unconstitutional policy or custom, or a facially constitutional policy that causes a constitutional violation." *Id.* (internal citation omitted). A plaintiff suing a municipality under § 1983 for the acts of one of its employees must show: (1) "a municipal policy or custom—either an official rule or one so entrenched in practice as to constitute an official policy[;]" (2) "that the municipality was deliberately indifferent to constitutional violations that were the obvious consequence of its policy[;]" and (3) "that the policy directly caused his constitutional injury." *Id.* (internal citations and quotation marks omitted).

Plaintiffs fail to meet any of the factors required to state a claim for relief under *Monell* because Plaintiffs have not identified any official policy, custom or practice of the City of Lawrence that caused their alleged injury. In fact, the Complaint (Doc. 1) does not refer to or even mention a policy or custom of the City of Lawrence at issue, much less refer to any deliberate indifference to constitutional violations that were the consequence of the policy or that the policy caused a constitutional injury. Plaintiffs' Complaint solely concerns the actions of City employees who prevented Plaintiffs unfettered access to the homeless encampment, specifically claiming that Individual Defendants Thornton, Robinson and Richardson denied their right to enter the homeless encampment and to "speak to, listen to, photograph, record, associate and assemble with residence of the homeless encampment." (Doc. 1, ¶¶ 75-77). Plaintiffs further allege that the Individual Defendants prevented them from accessing the homeless encampment because of prior reporting that was critical of the City of Lawrence. (Doc. 1, ¶ 78). All of Plaintiffs' factual averments relate

to the actions of employees of the City, which is the exact conduct that *Monell* protects local governments from liability.

Because there are no allegations of any unconstitutional policy, custom or practice; let alone a showing that there was a direct causal link between a City policy, or a lack of a policy and the Individual Defendants' conduct, Plaintiffs' claims against the City fail as a matter of law and should be dismissed with prejudice.

### C. QUALIFIED IMMUNITY BARS PLAINTIFFS' CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS, REQUIRING DISMISSAL WITH PREJUDICE.

The qualified immunity defense shields government officials from liability when performing discretionary functions, where the conduct of the government official "does not violate clearly established rights of which reasonable government officials would have known." *Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006) (quoting *Perez v. Unified Gov't of Wyandotte County/Kansas City, Kansas*, 432 F.3d 1163, 1165 (10th Cir. 2005)). Generally, there are two elements that must be satisfied for the application of qualified immunity: (1) a violation of a clearly established constitutional right; "and (2) the infringed right at issue was clearly established at the time of the allegedly unlawful activity such that 'every reasonable official would have understood that what he [was] doing' violated the law." *Kerns v. Bader*, 663 F.3d 1173 (10th Cir. 2011) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011)). This is a "heavy two-part burden" that the plaintiff must meet. *Medina v. Cram,* 252 F.3d 1124, 1128 (10th Cir.2001) (quoting *Albright v. Rodriguez,* 51 F.3d 1531, 1534 (10th Cir.1995)). "If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity." *Gross v. Pirtle*, 245 F.3d 1151, 1156 (10th Cir. 2001) (citing *Albright*, 51 F.3d at 1535).

"To qualify as clearly established, a constitutional right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Redmond v. Crowther*, 882 F.3d 927, 935 (10th Cir. 2018). A right is clearly established "when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as the plaintiff maintains." *Id.* at 935. To determine whether a particular constitutional right is clearly established, it is not enough to look at generalized principles, the inquiry is focused on whether a right is clearly established in light of the specific context of the case. *Id*.; *see also, Medina v. City and County of Denver*, 960 F.2d 1493, 1497-98 (10th Cir. 1992)). In fact, the United States Supreme Court has historically "vigorously underscored the point" that courts should not "define clearly established law at a high level of generality." *Id*. (citing *Ashcroft*, 536 U.S. 731. 131 S.Ct. 2074, 2083). "In other words, "a right is clearly established when a precedent involves materially similar conduct or applies with obvious clarity to the conduct at issue." *Brandt v. Crone*, No. 21-1093, 2022 WL 898761, at *2 (10th Cir. Mar. 28, 2022) (citing, *Apodaca v. Raemisch*, 864 F.3d 1071, 1076 (10th Cir. 2017) (emphasis and internal quotation marks omitted)). This high standard "ensures qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Redmond*, 882 F.3d at 935 (internal quotation marks omitted). Plaintiffs' Complaint fails to provide facts that employees in Defendants' position would have known Plaintiffs' rights to be clearly established and cannot avoid the protection of qualified immunity.

1. <u>Plaintiffs do not state a claim for a violation of the First Amendment against the Individual Defendants (COUNT I).</u>

Plaintiffs aver that the Individual Defendants violated their First Amendment rights by not allowing them to "speak to, listen to, photograph, record, associate and assemble with residents of the homeless encampment." (Doc. 1, ¶¶ 75-77). Plaintiffs' Complaint fails to plead any facts that

4791561

support finding that the homeless encampment is a traditional public forum so that access to the same could not be restricted.  A three-step analysis guides free speech claims on government property, namely the Court must: (1) "determine whether the plaintiff's conduct is protected speech"; (2) "identify the nature of the forum, because the extent to which the [defendant] may limit access depends on whether the forum is public or nonpublic"; and (3) determine "whether the justifications for exclusion from the relevant forum satisfy the requisite standard." *Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788, 797, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985). In the context of the First Amendment's guarantee of free speech, "[n]othing in the Constitution requires the Government to freely grant access to all who wish to exercise their right to free speech on every type of government property without regard to the nature of the property." *Id.* at 799-800 (internal citation omitted).

      a)  <u>The homeless encampment is a nonpublic forum and Plaintiffs' access was properly restricted.</u>

The extent to which the government may regulate access to public property depends on the category of forum into which the property falls: (1) traditional public fora; (2) designated public fora; (3) limited public fora; and (4) nonpublic fora. *Cole v. Goossen*, 402 F. Supp. 3d 992, 1013 (D. Kan. 2019) (internal citation omitted).  A traditional public forum is a place that "by long tradition or by government fiat [has] been devoted to assembly and debate" which would limit the ability of the City to control access. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983).  Only in a traditional public forum is "the government's right to limit expressive activity ... sharply circumscribed." *Brewer v. City of Albuquerque*, 18 F.4th 1205, 1219-20 (10th Cir. 2021) (internal quotation marks and citations omitted). The "purpose of traditional public fora is the free exchange of ideas, speakers can be excluded from a public forum only when the exclusion is necessary to serve a compelling state

interest and the exclusion is narrowly drawn to achieve that interest." *Evans v. Sandy City*, 944 F.3d 847, 853 (10th Cir. 2019) (internal citations omitted). Although a location may be generally open to the public, "[p]ublicly owned or operated property does not become a 'public forum' simply because members of the public are permitted to come and go at will." *Hawkins v. City and County of Denver*, 170 F.3d 1281, 1287 (10th Cir. 1999) (finding Denver altered the function of a former public street to remove any status of traditional public forum and Denver neither in practice nor in policy opened the forum for activities of public expression) (citing *International Soc'y for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 686, 112 S.Ct. 2701, 120 L.Ed.2d 541 (1992)). "In contrast, designated public fora are places that are not generally open to the public for First Amendment activity and 'are created by purposeful governmental action' to allow speech activity," and "[a]ccess to a nonpublic forum can be restricted" altogether by reasonable, viewpoint neutral rules. *Id.* (brackets and internal quotation marks and citations omitted).

There are no facts in Plaintiffs' Complaint that would allow the Court to conclude that the homeless camp is "a place that by long tradition or by government fiat have been devoted to assembly and debate" which would limit the ability of the City to control access. *Perry Educ. Ass'n*, 460 U.S. 37 at.  The Complaint is also devoid of any facts that support finding that the homeless camp is a designated public fora, "created by purposeful governmental action to allow speech activity." *Arkansas Educ. Television Com'n v. Forbes*, 523 U.S. 666, 677, 118 S.Ct. 1633, 140 L.Ed.2d 875 (1998).  Even assuming the land where the homeless camp is situated had been a location that had been generally open to the public, the City changed the physical nature of the property to such an extent that it no longer has traditional public forum status. *See, e.g., Hawkins*, 170 F.3d at 1287. The limited facts set forth in Plaintiffs' Complaint, demonstrate that the homeless camp is a nonpublic forum to which public access can be limited.   Plaintiffs were keenly aware

that the homeless camp was not traditional public for a because they had each written or published articles critical of the City of Lawrence's consideration to operate and/or close the North Lawrence homeless encampment. (Doc. 1, ¶¶ 18; 25; 31). Similar to a city-owned building that is leased to another entity or organization, city-owned land that is used by the homeless population is a nonpublic forum. *See, Fenn v. City of Truth or Consequences*, 983 F.3d 1143, 1148 (10th Cir. 2020) (internal quotation marks omitted), *cert. denied*, 142 S. Ct. 111 (2021).

Both Plaintiffs were asked to leave the homeless encampment following a death. While Plaintiffs contend that they wanted to enter the area for the purpose of providing aid and comfort to grieving people and to report on the City's response to the death (Doc. 1, ¶39, 40, 41, 44), there are no facts stated as to why they should have been allowed access to a nonpublic forum. Plaintiff Long was advised that she needed to leave the homeless camp and to conduct any reporting outside the barriers. (Doc. 1, ¶49 and 50). Plaintiff Eravi was told that he was being trespassed from the homeless camp. (Doc. 1, ¶52). Although it is not clearly articulated in the Complaint, Plaintiffs acknowledge that there were restrictions in place that prevented the public from entering the homeless camp at any time for any purpose. Plaintiffs do not provide the Court with facts as to the nature of the restrictions, nor do they state any facts challenging the reasonableness of the restrictions on public access to the nonpublic homeless camp. There are no factual allegations that the City opened the homeless encampment for the purposes of public expressive activity and Tenth Circuit precedent directs that "[a]cess to a nonpublic forum can be restricted" altogether by reasonable, viewpoint neutral rules. *Evans,* 944 F.3d at 853. The homeless encampment is not a public forum by tradition or designation, it is a nonpublic forum and restricting access does not result in a violation of the First Amendment.

      b) <u>Plaintiffs' First Amendment rights were not violated when access to the homeless camp was restricted</u>.

  "[T]he Tenth Circuit has established that there 'is no general First Amendment right of access to all sources of information within governmental control[.]'" *Mocek v. City of Albuquerque*, 3 F. Supp. 3d 1002, 1069 (D.N.M. 2014) (citing *Smith v. Plati*, 258 F.3d 1167, 1178 (10th Cir. 2001)). "Further, the 'right to speak and publish does not carry with it the unrestrained right to gather information.'" *Id.* (citing *Zemel v. Rusk*, 381 U.S. 1, 16-17, 14 L.Ed.2d 179 (1965)). "[T]he Tenth Circuit recognizes 'no general First Amendment right to all sources of information within governmental control.'" *Id.* at 1069-1070 (citing *Smith*, 258 F.3d at 1178). Plaintiffs have asserted that they were engaged in "newsgathering" activity at the homeless encampment. (Doc. 1). This conduct "entails less First Amendment protection than that [conduct] . . . of which a reasonable regulation included a complete prohibition." *Id.* at 1070. This type of non-public forum providing regulation of the First Amendment activity is only examined on the basis of reasonableness. *Id.* at 1071 (citing *United States v. Kokinda*, 297 U.S. 720, 726-727, 110 S.Ct. 3115, 111 L.Ed.2d 571 (1990)). "A reasonable restriction 'need not be the most reasonable or the only reasonable limitation,'" *Id.* (citing *Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 120 L.Ed.2d 541 (1992)). "Governmental restrictions on access to a nonpublic forum are valid so long as 'the restrictions are reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view.'" *Id.* at 1073 (citing *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 800, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985)).

  In *Mocek v. City of Albuquerque*, the TSA's prohibition on the plaintiff's recording at the security checkpoint was not an unreasonable. *Id.* at 1072. The Court granted the defendant's motion to dismiss, holding that the plaintiff failed to allege that government agents and officers "orders that he stop recording constituted an unreasonable restriction on his right to gather news

or record government officials' activity in public—rights subject to reasonable time, place and manner restrictions." *Id.* at 1073. The Court's reasoning noted that ordering the plaintiff to stop recording was reasonable because the agents never inhibited the plaintiff's "ability to gather news in other areas of the terminal, where the TSA's security concerns [were] likely less poignant." *Id.* (internal citation omitted).

Plaintiffs' do not allege that Defendants ordered that they exit the homeless encampment to restrict their right to gather news or to record government officials' activity in public. Just as the defendants in *Mocek* did not completely restrict the ability to record, Defendants allowed Plaintiffs to perform their reporting activities outside of the barriers of the encampment. Plaintiffs were not prevented from exercising their First Amendment rights in reporting about the homeless encampment, the death or any other activities from outside the barriers.  The Complaint does not state any facts that support a finding that restricting Plaintiffs' reporting rights from inside the homeless encampment was unreasonable. (Doc. 1, ¶ 49; 50).

        c) <u>The Individual Defendants did not violate a right that was clearly established</u>.

A right is clearly established "when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as [the] plaintiff maintains." *Redmond*, 882 F.3d at 935  (internal citation omitted).   To determine whether a particular constitutional right is clearly established, it is not enough to look at generalized principles, the inquiry is focused on whether a right is clearly established in light of the specific context of the case.  *Medina*, 960 F.2d at 1497-98. This high standard "ensures qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Redmond*, 882 F.3d at 935 (internal quotation marks and citation omitted).

There is no Tenth Circuit or Supreme Court case, or clear authority from other courts, addressing the unique character of a homeless shelter or camp when restrictions are placed on unlimited pubic access to the area. In *Mocek*, the Court found that a reasonable officer would not likely understand that telling the plaintiff to stop recording and summoning the police for his arrest violated his First Amendment rights. 3 F. Supp. 3d at 1074-1075. That is, "neither the Tenth Circuit nor the Supreme Court has found that [the plaintiff's] right to gather news in this context is clearly established." *Id.* at 1074 (citing *Smith*, 258 F.3d at 1178 ("noting that it is 'well-settled that there is no general First Amendment right of access to all sources of information within government control")). Instead, the Supreme Court has found that nonpublic forum restrictions need only be reasonable. *Id.* Plaintiffs were not prevented from exercising their First Amendment Rights in reporting about the homeless camp or the death that occurred, they were directed to do so outside the barriers. (Doc. 1, ¶49 and 50). There is no Tenth Circuit or Supreme Court case, or clear authority from other courts, that places the conduct of the Individual Defendants in restricting access to the homeless camp "beyond debate," *Thompson v. Ragland*, 23 F.4th 1252, 1255 (10th Cir. 2022), the Individual Defendants are entitled to qualified immunity.

Plaintiffs have not shown that they were engaged in constitutionally protected activity because the homeless encampment is not the type of public forum to which the government must allow unregulated access. Plaintiffs have not pled facts that support a finding that the Individual Defendants violated a clearly established constitutional right. Individual Defendants Thornton, Robinson and Richardson are entitled to qualified immunity and Count I should be dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

       2.      <u>Plaintiffs do not state a claim for Abuse of Process against the Individual Defendants (Count II).</u>

Plaintiff Eravi alleges that Defendants Cicely Thornton and Skylar Richardson knew that it was improper to report Plaintiff Eravi as trespassing on public property and that the citation was issued to harass or cause undue hardship in retaliation for his reporting activities through Lawrence Accountability, LLC. (Doc. 1, ¶¶ 83 and 84). The first inquiry in a § 1983 action is whether the plaintiff has alleged an actionable constitutional violation. *Moral v. Hagan*, No. 10-2595-KHV/KGG, 2011 WL 2746833, at *3 (citing *Wilkins v. DeReyes*, 528 F.3d 790, 797 (10th Cir. 2008)). Courts look to the common law elements of abuse of process to provide the elements relevant for a federal cause of action pursuant to Section 1983. *See Stegall v. Great American Ins. Co.*, 996 F. Supp. 1060, 1069 (D. Kan. 1998); *McShares Inc. v. Barry*, 266 Kan. 479, 494, 970 P.2d 1005 (Kan. 1998); *Erikson v. Pawnee Cty. Bd. of Cty. Comm'rs*, 263 F.3d 1151, 1155 n.5 (10th Cir. 2001). To establish an abuse of process claim, a plaintiff must prove: (1) that the defendant made "an illegal, improper, perverted use of the process," (2) that the defendant had "an ulterior motive or purpose in exercising the illegal, perverted or improper use of process," and (3) that plaintiff was damaged by the abuse of process. *Safeguard Business Sys., Inc. v. Hoeffel*, No. 89-24444-0, 1991 WL 12867, at *6 (D. Kan. Jan. 16, 1991); *Porter v. Stormont-Vail Hosp.*, 228 Kan. 641, 621 P.2d 411, 416 (1980). The focus of the tort of abuse of process is not the wrongfulness of the ensuing criminal prosecution, but some "extortionate perversion of lawfully initiated process to illegitimate ends." *Heck v. Humphrey,* 512 U.S. 477, 486 n. 5, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). The gist of the tort is the misuse or misapplication of process, justified in itself, for an end other than that which it was designed to accomplish. *Tappen v. Ager,* 599 F.2d 376, 380 (10th Cir. 1979) (internal citation omitted). The mere initiation of proceedings,

however—with or without justification—does not constitute abuse of process. *Id.* (internal citation omitted); *See also*, *Stegall,* 996 F. Supp. at 1070 (internal citations omitted).

Probable cause existed to issue a citation to Plaintiff Eravi for trespassing because he admits that he committed criminal trespass by knowingly entering and remaining upon land knowing he was not authorized to do so and remained there in defiance of an order not to enter the property. *See,* K.S.A. 21-5808(1)(A). Plaintiff Eravi was notified that Defendant Thornton had enjoined him from entering the homeless encampment on March 21, 2023. (Doc. 1, ¶52). Plaintiff Eravi returned to the homeless encampment on March 23, 2023, and was again told that unauthorized visitors to the homeless encampment were not allowed and was prevented access. (Doc. 1, ¶58). After twice being ordered not to enter the homeless encampment, Plaintiff Eravi knowingly and intentionally entered the homeless encampment on March 27, 2023. (Doc. 1, ¶65). Officer Richardson responded to a call that Plaintiff Eravi had entered the homeless encampment and thereafter issued Plaintiff Eravi a citation for trespassing. (Doc. 1, ¶¶ 66, 67).

In addition to the existence of probable cause for the trespassing citation, the Complaint does not state any facts that demonstrate any wrongful act by the Individual Defendants after the dismissal of the trespass charge. It only contains allegations regarding the Individual Defendants' actions that led to issuance of the citation to Plaintiff Eravi for trespass. There are no factual allegations that the Individual Defendants made improper use of process, or that issuing the citation for trespass was designed for an end other than to hold plaintiff responsible for his actions for trespassing. In the absence of a constitutional violation for abuse of process, qualified immunity applies and dismissal of Count II is warranted for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

### III.     CONCLUSION

Plaintiffs' Complaint fails to state a claim against Defendants, City of Lawrence, Kansas, Cicely Thornton, Ryan Robinson and Skylar Richardson and the same should be dismissed with prejudice.

>Respectfully submitted,
>
>HINKLE LAW FIRM LLC
>8711 Penrose Lane, Suite 400
>Lenexa, Kansas 66219-8197
>913-345-9205/ FAX: 913-345-4832
>
>By:     /s/ Michelle R. Stewart
>   Michelle R. Stewart, mstewart@hinklaw.com   #19260
>   Lindsey R. Freihoff, lfreihoff@hinklaw.com    #28560
>
>ATTORNEYS FOR DEFENDANTS
>CITY OF LAWRENCE, KANSAS; CICELY THORNTON; RYAN ROBINSON; AND SKYLAR RICHARDSON

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 19th day of January, 2024, the foregoing *Memorandum in Support of Motion to Dismiss* was filed electronically with the Clerk of the US District Court for District of Kansas; and a service copy was served via ECF electronic notification on the following:

Joseph T. Welsh, #78138
*Attorneys for Plaintiffs*

>    /s/ Michelle R. Stewart
>ATTORNEYS FOR DEFENDANTS
>CITY OF LAWRENCE, KANSAS; CICELY THORNTON; RYAN ROBINSON; AND SKYLAR RICHARDSON

4791561