## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

PHILLIP MICHAEL ERAVI, et al.,

    Plaintiffs,

    v.

CITY OF LAWRENCE, KANSAS, et al.,

    Defendants.

Case No. 5:23-CV-4109-JAR-GEB

## MEMORANDUM AND ORDER

Plaintiffs Michael Eravi, Chansi Long, and Lawrence Accountability, LLC ("Lawrence Accountability") bring this action under 42 U.S.C. § 1983 against Defendants City of Lawrence, Kansas, Cicely Thornton, Ryan Robinson, and Skylar Richardson.  Long voluntarily dismissed her claims on January 30, 2024.  Plaintiffs Eravi and Lawrence Accountability allege that Defendants violated their rights under the First Amendment by prohibiting Eravi from entering a homeless encampment, and for issuing Eravi with a citation for trespassing.

Two matters are before the Court: (1) Defendants' Motion to Dismiss (Doc. 11) for failure to state a claim under Fed. R. Civ. P. 12(b)(6); and (2) Plaintiff's Motion to Amend, Supplement, Join Additional Parties, and Consolidate (Doc. 20).  In Plaintiffs' response to the motion to dismiss, they request leave to amend.[1]  Then, two and a half months after the motion to dismiss was fully briefed, new counsel entered an appearance for Plaintiff Eravi and separately moved for leave to amend on different/additional grounds, attaching a proposed amended pleading for the Court's review, in compliance with the Court's local rule.  Below, the Court first considers the motion to dismiss, together with Plaintiffs' original request for leave to amend.

---

[1] Doc. 17 at 2–5.

The Court then considers Eravi's motion to amend, supplement, join parties, and consolidate. Both motions have been fully briefed,[2] and the Court is prepared to rule.  For the reasons stated below, the Court grants Defendants' motion to dismiss and denies Eravi's motion for leave to amend and supplement.

I.      **Motion to Dismiss**

        A.      **Background**

        The following facts are alleged in Plaintiff's Complaint.[3]  For the purposes of deciding this motion, the Court assumes these facts to be true.

        Eravi started Lawrence Accountability as a YouTube channel on May 14, 2021, and operated it as a sole proprietorship until February 6, 2023.  On that date, Eravi organized Lawrence Accountability as a single member limited liability company.  Eravi is the only individual involved in operating Lawrence Accountability.  Lawrence Accountability's purpose is to post videos that point out failures by the City of Lawrence, Kansas ("City"), to hold its police officers, employees, and elected officials accountable.  Most of Lawrence Accountability's videos are critical of the City.

        In the fall of 2022, Eravi learned that the City was trying to close a homeless encampment, and he began to visit three different homeless encampments within the City.  Eravi visited encampments located in Bircham Park, Amtrack, and North Lawrence.  Eravi started to volunteer and fundraise for the homeless residents in the encampments.  Through these endeavors, Eravi met Jennifer Wolsey, the former Homeless Programs Coordinator for the City.

---

[2] The Court cautions Defendants to comply with the Local Rules governing page limits in the future. Pursuant to D. Kan. Rule 7.3(d)(3), replies in support of a motion to dismiss may not exceed 5 pages.

[3] Doc. 1.

Eravi often coordinated relief efforts for the homeless encampments with Wolsey and other homeless advocates.

On March 21, 2023, Wolsey learned that one of the homeless residents in the North Lawrence homeless encampment had died.  Wolsey contacted Eravi and asked him to come to the encampment.  A resident of the homeless encampment also contacted Long, who was a reporter for the Lawrence Times.[4]  Long had an extensive history of reporting critically about the City's handling of the homeless encampments, and had provided news coverage of two prior deaths that occurred in the encampments.

Eravi and Long went to the homeless encampment to report on what was happening, and to provide aid to those grieving the death of the homeless resident.  Eravi and Long started to document the conditions at the camp, and Eravi posted a video to Lawrence Accountability's YouTube channel while on the scene.  Then, Lawrence police officers told Long that she could not be in the encampment, and she left the homeless encampment under duress.  Later, Long was told by the City that she had to do her reporting "outside the barriers."[5]  At some point, a City employee told Eravi that Long was asked to leave because, "[t]here is a time and place for everything.  There is not a story to break today."[6]

Shortly after Long left, Defendant Robinson, a Sergeant with the Lawrence Police Department, told Eravi that he "was being trespassed [sic]"[7] from the homeless encampment, upon orders from Defendant Thornton.  Thornton is a City employee who works as a Homeless

---

[4] Plaintiff Long voluntarily dismissed her claims and did not cite a reason for doing so, but Eravi noted in a separate filing that she passed away after filing the Complaint. Doc. 17 at 1.  Thus, the Court uses the past-tense in discussing the Complaint's allegations concerning Long.

[5] Doc. 1 ¶ 50.

[6] *Id.* ¶ 49.

[7] *Id.* ¶ 52.

Program Specialist.  Robinson, along with Officer Prue, directed Eravi to leave the encampment. One of the officers told Eravi that if he did not leave, he would be arrested and taken to jail for trespassing, "no question about it at all."[8]  Eravi asked how long he would be enjoined from entering the encampment, and Robinson said that his enjoinment was "permanent, until it is lifted by Cicely Thornton."[9]  Eravi left the encampment under duress.

On or about March 23, 2023, Eravi returned to the North Lawrence homeless encampment, but did not enter.  He was advised by Ron Zagorik[10] that unauthorized visitors were not allowed to enter, and that Thornton had discretion over who was authorized to enter. Long was also enjoined from entering the encampment that day, but was allowed to enter at 3:51 p.m.. At that time, Cameron Dabney[11] spoke with Thornton, who instructed Dabney that Long was no longer enjoined from the encampment.  Eravi was not allowed to enter.

On March 27, 2023, Eravi entered the North Lawrence homeless encampment. Defendant Richardson, a City police officer, and two other policemen, responded to Eravi entering the encampment.  Upon the authority of Thornton, Richardson issued Eravi with a municipal summons for trespassing.  On May 17, 2023, the City dismissed the trespass action without prejudice.

### B.    Legal Standard

To survive a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), a complaint must contain factual allegations that, assumed to be true, "raise a right to relief above the speculative

---

[8] *Id.* ¶ 54.

[9] *Id.* ¶ 56.

[10] The Complaint does not explain who Zagorik is, or in what capacity Zagorik told Eravi not to enter.

[11] The Complaint also fails to explain who Dabney is.

level"[12] and must include "enough facts to state a claim for relief that is plausible on its face."[13] Under this standard, "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[14]  The plausibility standard does not require a showing of probability that "a defendant has acted unlawfully," but requires more than "a sheer possibility."[15]  "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[16]  Finally, the court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[17]

The Supreme Court has explained the analysis as a two-step process.  For the purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'"[18]  Thus, the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[19]  Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[20]  "A claim has facial plausibility when the plaintiff pleads factual content

---

[12] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216, at 235–36 (3d ed. 2004)).

[13] *Id*. at 570.

[14] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[15] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

[16] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

[17] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

[18] *Id*. (quoting *Twombly*, 550 U.S. at 555).

[19] *Id*. at 678–79.

[20] *Id*. at 679.

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[21]

### C.  Discussion

Plaintiffs raise a claim under the First Amendment against all Defendants (Count 1), and a claim for abuse of process against the City, Thornton, and Richardson (Count 2).[22]  Defendants argue that Plaintiffs: (1) failed to state a claim against the City for either Count; and (2) failed to state a claim against the individual Defendants because each is entitled to qualified immunity.  In their response to Defendants' motion, Plaintiffs concede that they failed to state a claim against the City, and failed to state a First Amendment claim against any Defendant.  Plaintiffs seek leave to amend the Complaint to add more factual allegations to Count 1, and to create support for municipal liability.  Plaintiffs assert that they have stated a claim for abuse of process against Thornton and Richardson, but nevertheless seek leave to amend Count 2 as well.

The Court first considers whether Plaintiffs state a plausible claim for abuse of process, and then considers Plaintiffs' request for leave to amend.  As described below, the Court finds that Plaintiffs fail to state a plausible claim against any Defendant, and that leave to amend is not warranted.

### 1.  Rule 12(b)(6)

Plaintiffs concede that they failed to state a claim under Count 1, and failed to state a claim against the City under either Count.  Thus, the Court grants Defendants' motion to dismiss

---

[21] *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

[22] Plaintiffs do not specify whether they sue the individual Defendants in their individual or official capacities.  However, Plaintiffs state that individual Defendants were "acting under the color of state law" during all events listed in the Complaint.  Doc. 1 ¶ 74.  Thus, the Court construes the Complaint as raising individual-capacity claims against the individual Defendants.  To the extent that the Complaint could be construed to raise official capacity claims against the individual Defendants, those claims are duplicative of Plaintiffs' claims against the City and will be subsumed by the Court's analysis of the claims raised against the City.  *See Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).

Count 1 and the municipal liability claims against the City under Counts 1 and 2.  Therefore, the Court need only determine whether Plaintiffs have set forth a plausible individual-capacity claim for abuse of process against Thornton and Richardson.

To state an abuse of process claim under Kansas law, a plaintiff must allege that: "(1) defendants made an illegal, improper, or perverted use of civil process; (2) defendants had an ulterior motive or purpose in exercising the illegal, improper or perverted use of civil process; and (3) plaintiff was damaged by the abuse of process."[23]  To state a § 1983 abuse of process claim, as Plaintiffs allege here, plaintiffs must plead the common law elements of abuse of process as well as a constitutional violation.[24]  The essence of the tort of abuse of process focuses on "some extortionate perversion of lawfully initiated process to illegitimate ends."[25]  "[A]buse of process is concerned with the misuse of process that was 'justified in itself, for an end other than that which it was designed to accomplish.'"[26]  The mere initiation of proceedings, with or without justification, does not constitute abuse of process.[27]

Plaintiffs assert that Thornton and Richardson intentionally issued a false citation for trespassing to Eravi, for the express purpose of singling him out from entering the encampment and preventing him from reporting on the events.  Defendants assert that Plaintiffs fail to state a claim for abuse of process for three reasons: (1) Plaintiffs fail to allege any misuse of process,

---

[23] *Stegall v. Great Am. Ins. Co.*, 996 F. Supp. 1060, 1069 (D. Kan. 1998) (collecting Kansas cases).

[24] *Taylor v. Meacham*, 82 F.3d 1556, 1561 (10th Cir. 1996).

[25] *See Stegall*, 996 F. Supp. at 1070 (citing *Heck v. Humphrey*, 523 U.S. 477, 486 n.5 (1994)).

[26] *Hall v. Hupp*, 523 F. App'x 521, 524 (10th Cir. 2013) (quoting *Good v. Bd. of Cnty. Comm'rs*, 331 F. Supp. 2d 1315, 1330 (D. Kan. 2004)).

[27] *See Good*, 331 F. Supp. 2d at 1330–31; *McGregor v. City of Neodesha*, No. 22-1033-EFM, 2022 WL 6728149, at *7 (D. Kan. Oct. 11, 2022); *Jackson v. Kan. Cnty. Ass'n Multiline Pool*, No. 03-4181-JAR, 2005 WL 756773, at *6 (D. Kan. Jan. 19, 2005).

but challenge only the initiation of process; (2) there was probable cause to issue Eravi with a citation for trespassing; and (3) Defendants are entitled to qualified immunity.

Plaintiffs do not state a claim for abuse of process because they challenge only the issuance of the citation.  The only allegations in the Complaint are that Plaintiff was issued with a citation, which was later dismissed without prejudice.  There are no factual allegations to support an inference that Richardson issued Eravi a citation for "an end other than"[28] charging Eravi with criminal trespass.  Thus, Plaintiffs impermissibly rest their claim not on the misuse of legal process after it was issued, but rather on the initiation of process.  This alone is sufficient to dismiss Plaintiffs' abuse of process claim for failure to state a claim.

Defendants also argue that Plaintiffs fail to state a plausible claim for abuse of process because the trespassing citation was supported by probable cause.  "Probable cause is based on the totality of the circumstances, and requires reasonably trustworthy information that would lead a reasonable officer to believe that the person about to be arrested has committed or is about to commit a crime."[29]  Defendants note that Eravi was warned several times not to enter the encampment, and was specifically warned that he would be charged with trespassing if he did so.  Plaintiffs purport to counter this assertion by arguing that there was no rational basis for excluding Eravi from the encampment, but this argument is not well-founded.

It is evident from the face of the Complaint that there was probable cause for Richardson to issue Eravi a citation for trespassing.  A City employee, Thornton, instructed the police that Eravi was enjoined from entering.  Police officers warned Eravi several times not to enter, but he

---

[28] *See Hall*, 523 F. App'x at 524 (noting that the plaintiff's assertion that a search warrant was used to harass and retaliate is unsupported because, in part, the plaintiff offers "only conclusory assertions that the search warrant was used to harass him instead of for its intended purpose.").

[29] *Fenn v. City of Truth or Consequences*, 983 F.3d 1143, 1149 (10th Cir. 2020) (quoting *Cortez v. McCauley*, 478 F.3d 1108, 1116 (10th Cir. 2007)).

knowingly defied those orders.  Based on these facts, there was probable cause to issue Eravi with a citation for trespassing.  The fact that Eravi did not believe his enjoinment was fair, or just, does not counteract the fact that he knew he was prohibited from entering the camp. Though probable cause does not immediately defeat an abuse of process claim, like it does a malicious prosecution claim,[30] the presence of probable cause undermines Plaintiffs' assertion that Defendants had an improper motive when they issued him with a citation.

Finally, Defendants assert that they are entitled to qualified immunity because Plaintiffs did not allege that they suffered a violation of their constitutional rights that was clearly established.  However, the qualified immunity analysis is complicated by the fact that Plaintiffs fail to identify the constitutional violation they allegedly suffered.[31]  Instead, Plaintiffs merely label their abuse of process claim as arising under § 1983.  As described above, to state a claim for abuse of process under § 1983, a plaintiff must plausibly allege both the tort and the constitutional violation.  The Court declines to speculate about which constitutional violation Plaintiffs intended to allege by suing under § 1983, and instead bases its ruling on Plaintiffs' failure to plausibly allege the common law elements.  Since the Court declines to reach the constitutional violation analysis, it would be inappropriate to consider qualified immunity. Therefore, Plaintiffs fail to state a claim for abuse of process because they do not plausibly allege the common law elements of the tort.

### 2.     First Request for Leave to Amend

In their response to the motion to dismiss, Plaintiffs seek leave to amend both claims in the Complaint.  Under Fed. R. Civ. P. 15(a)(2), leave to amend a complaint is freely given when

---

[30] *See id.* at 1149–50.

[31] *See Taylor v. Meacham*, 83 F.3d 1556, 1561 (10th Cir. 1996).

justice so requires.  A party is typically granted leave to amend under this rule unless there is "a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendment previously allowed, or futility of amendment."[32] Here, however, Plaintiffs failed to comply with D. Kan. Rule 15.1, which requires that motions for leave to amend "attach the proposed pleading or other document; and . . . attach a redlined version of the proposed amendment that shows all proposed changes to the pleading."  Plaintiffs did not attach the proposed amended Complaint, nor a redlined version of the original Complaint.  Instead, in Plaintiffs' response opposing the motion to dismiss, they assert numerous times that they "believe" they can support both claims if the Court grants them leave to amend.

The Court cannot evaluate a request for leave to amend on the basis of pure speculation that Plaintiffs will be able to support their claims.  This is why the Local Rules require movants to file the proposed amended document together with motions for leave to amend.  Plaintiffs' failure to comply with Local Rule 15.1 is alone sufficient to deny leave to amend.

Nor would Plaintiffs' conclusory assertions, if supported with factual allegations, create plausible claims.  Regarding Count 2, Plaintiffs request the opportunity to "review" the claim and potentially change it to one for malicious prosecution.  As stated above, probable cause is a bar to a claim for malicious prosecution and there was probable cause to issue Eravi with a citation for trespassing.  Thus, changing the claim to one for malicious prosecution would be futile,[33] and Plaintiffs offer no other information for the Court to consider in their request for leave to amend.  Therefore, Plaintiffs' first request for leave to amend is denied as to Count 2.

---

[32] *Duncan v. Manager*, 397 F.3d 1300, 1315 (10th Cir. 2005) (quoting *Frank v. U.S. W., Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993)).

[33] *Bradshaw v. Lappin*, 484 F. App'x 217, 225 (10th Cir. 2012) ("A court properly may deny a motion for leave to amend as futile when the proposed amended complaint would be subject to dismissal for any reason . . . ." (quoting *Bauchman ex rel. Bauchman v. W. High Sch.*, 132 F.3d 542, 562 (10th Cir. 1997))).

As to Count 1, the Complaint broadly asserts that Defendants "violated [Plaintiffs'] rights to speak to, listen to, photograph, record, associate and assemble with residents of the homeless encampment."[34]  Plaintiffs request leave to amend in their response to the motion to dismiss because they "believe" they can state a claim against the City by showing that Thornton was the authorized, final policy-maker for the City.  But Plaintiffs do not indicate that they will provide more specificity about their First Amendment claim, and they fail to allege the existence of a policy that would support *Monell*[35] liability.  Therefore, it would be futile to grant Plaintiff leave to amend Count 1 against the City.

As to Thornton, Richardson, and Robinson, Plaintiffs allege that they will introduce facts about the forum status and zoning classification of the encampments.  But Plaintiffs fail to allege which type of forum the homeless encampment is, and the comment about zoning is wholly irrelevant.  Plaintiffs assert that they "believe" they can "plead that the press, and specifically Eravi, were treated differently than all other members of the public."[36]  Plaintiffs' conclusory assertions, which are utterly devoid of factual detail, fail to support an inference that they will be able to raise plausible claims.  Though the Court cannot find that granting leave to amend Count 1 would be futile as to Thornton, Robinson, and Richardson, Plaintiffs' failure to comply with D. Kan. Rule 15.1 mandates denial of leave to amend.

Therefore, the Court denies Plaintiffs' request to amend Count 2 against all Defendants, and Count 1 against the City, because it would be futile.  The Court denies Plaintiffs' request to amend Count 1 against Thornton, Richardson, and Robinson because Plaintiffs failed to comply with Local Rule 15.1.

---

[34] Doc. 1 ¶ 75.

[35] *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

[36] Doc. 17 at 4.

## II.      Motion to Amend, Supplement, Join Additional Parties, and Consolidate

Two and a half months after Defendants fully briefed their motion to dismiss, new counsel entered an appearance for Plaintiff Eravi and filed a motion to amend, supplement, join additional parties, and consolidate.[37]  The motion seeks to remove Long and Lawrence Accountability from the lawsuit, leaving only Eravi as Plaintiff.  Thus, in this section, the Court will refer to "Plaintiff" in the singular.  Plaintiff seeks to: (1) amend the factual allegations and claims arising out of his involvement with the homeless encampments; (2) amend the Complaint to allege facts and claims about his arrest for felony interference with police officers; (3) join four additional Defendants, all Lawrence Police Officers; and (4) consolidate this action with Case No. 5:24-cv-4042, Plaintiff's newly-filed action that raises the same felony arrest facts and claims that he seeks to add to this case.

Defendants oppose the motion on the grounds that: (1) Plaintiff failed to comply with Local Rule 15.1; (2) amendment would be futile under Rule 20(a)(2); (3) Plaintiff's proposed additional facts are not supplements because they do not post-date the Complaint; and (4) consolidation is improper.  As described below, the Court denies Plaintiff's motion and dismisses this action with prejudice.

### A.      Proposed Amended Complaint

Plaintiff's proposed Amended Complaint[38] would excise almost the entire 12-page Complaint, and replace it with a 75-page document.  Below, the Court sets forth a summary of the proposed factual allegations, and then sets forth the proposed claims.

---

[37] Doc. 20.

[38] Doc. 20-3.

The proposed Amended Complaint begins with an "introduction" setting forth 8 pages of facts about Plaintiff's May 20, 2023 felony arrest.  Then, the proposed Amended Complaint details the jurisdiction and venue of this case, and the parties, adding David McShane, Meagan Shipley, Grant Foster, and Austin Twite as Defendants.  Next, the pleading sets forth four pages of facts about Plaintiff's involvement with the homeless encampment.  It describes a "policy" that the City applies to homeless residents of the encampments.  The policy prohibits residents from having personal contact with outside visitors, unless permitted by the City.  Plaintiff alleges that the City enforces the policy discriminately, allowing other journalists to enter the encampment but preventing him from doing so.  The proposed Amended Complaint alleges that, after Plaintiff's citation for trespass at the encampment on March 27, 2023, Plaintiff received two more citations for trespassing at the encampment.  Police issued Plaintiff with the second citation on June 21, 2023, and Plaintiff was charged in municipal court with trespass.  Plaintiff received the third trespass citation on July 25, 2023.  Plaintiff alleges that he has not returned to the encampments since the date of the third trespassing citation.

Then, the proposed Amended Complaint sets forth another 35 pages of factual allegations about the May 2023 felony arrest.  Highly summarized, the proposed Amended Complaint alleges that, in the late evening of May 19, 2023, there was a shoot-out between neighbors in the 1900 block of Heatherwood Drive—a populated residential neighborhood.  "Defendants"[39] responded at 10:37 p.m. and treated it as an active shooter scene.  Defendants learned that a person was injured and provided aid on the scene, and believed that an armed shooter was inside a home located at 1951 Heatherwood Drive.  The Lawrence Police Department deployed a

---

[39] Plaintiff uses the label "Defendants" to describe the law enforcement officers who responded to the scene.  Doc. 20-3 ¶ 80.

Critical Response Team ("CRT") to deal with the active shooter.  The CRT used an armored vehicle and a loudspeaker to communicate with the suspect inside the residence, and tried to persuade the suspect to surrender.  After several hours without a response from the suspect, officers entered the residence and apprehended the shooter in the early morning hours of May 20, 2023.  The suspect was later identified as Joshua Townsend, and he was armed upon arrest.

Plaintiff was present at the scene in his capacity as a citizen journalist, across the street from Townsend's house and on private property.  The residents of the neighborhood had not been evacuated, but were asked to shelter in place and stay indoors.  Plaintiff did not think that there was any danger at the scene because, when he approached the scene, there were no police present and no crime tape.  Plaintiff was walking on public property[40] when he was attacked by the police, without warning, and "forcefully moved around by the defendant officers using pain compliance tactics for thirty seconds before he was even informed he was under arrest."[41] Defendant McShane previously told Plaintiff that he was free to walk, but then "suddenly, without notice or warning, that same officer then forcibly stopped, detained, and arrested him as Mr. Eravi had moved back South parallel to the private property of the apartment."[42]

The proposed Amended Complaint describes at length the precise circumstances leading up to the arrest, including a multitude of pictures taken by Plaintiff on that night, as well as aerial map views of the neighborhood.  Transcripts of conversations captured on body camera footage show that McShane told Plaintiff he needed to get inside if he was a resident, or leave if he did

---

[40] The Court presents the allegations from the proposed Amended Complaint as they are written.  The Court notes, however, that Plaintiff's use of the words "public" and "private" is not consistent.  It is also difficult to establish the order of events because the proposed Amended Complaint jumps around in time (i.e., it is unclear when Plaintiff arrived, when the police arrived, what kind of warning, if any, he received before arrest, etc.).

[41] Doc. 20-3 ¶ 100.

[42] *Id.* ¶ 104.

not live in the neighborhood.  McShane also told Plaintiff he was free to walk, but followed Plaintiff as he walked around the area, stating that he had "to cover" Plaintiff.

The proposed Amended Complaint alleges that, when officers contacted dispatch about Plaintiff's presence on the scene, dispatch said to detain him.  At the time, Plaintiff was walking around the area and taking pictures of several police vehicles.  Despite being directed to detain Plaintiff, McShane arrested Plaintiff.  Plaintiff states that he was never informed that he was in any danger.  Yet, when the officers grabbed Plaintiff to arrest him, they told him that he was being moved for his own safety.  After his arrest, Plaintiff "was charged with a level 9 nonperson felony citing K.S.A. 21-5904(a)(3) & (b)(5)(A)."[43]

Then, the proposed Amended Complaint sets forth six claims over an additional 23 pages: (1) "prior restraint and retaliatory policy of prohibiting the exercise of free speech," against the City; (2) "retaliation and retaliatory arrest for exercise of protected speech . . . against all Defendant officers"; (3) "Fourth Amendment violation—unlawful arrest/failure-to-intervene (against all Defendant officers not named Robinson or Richardson)"; (4) "excessive force (against all Defendant officers not named Robinson or Richardson)"; (5) "malicious prosecution under 42 U.S.C. § 1983 against Defendant officers"; and (6) "negligent failure to train and failure to supervise under 42 U.S.C. § 1983 against Defendant City of Lawrence."[44]  None of the claims are cabined to the homeless encampment facts.  The proposed Amended Complaint mentions the homeless encampment facts/trespassing citations briefly in Claims 1, 2, and 5, along with facts about the felony arrest.  Claims 3, 4, and 6 deal solely with the felony arrest.

---

[43] *Id.* ¶ 202.

[44] *Id.* at 52–73.

**B.      Legal Standards**

Under Fed. R. Civ. P. 15(a)(2), leave to amend a complaint is freely given "when justice

so requires."  A party is typically granted leave to amend under Rule 15(a) unless there is "a

showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive,

failure to cure deficiencies by amendment previously allowed, or futility of amendment."[45]  The

local rules for the District of Kansas provide that parties filing a motion to amend must, in

relevant part:

> (1) set forth a concise statement of the amendment or leave sought;
> (2) attach the proposed pleading or other document; and (3) in the
> case of a proposed amended pleading, a non-pro se filing must also
> attach a redlined version of the proposed amendment that shows all
> proposed changes to the pleading.[46]

In considering a motion for leave to amend that seeks to join additional parties as

defendants, courts consider Rule 20 alongside Rule 15.[47]  Fed. R. Civ. P. 20(a)(2) provides:

> Persons . . . may be joined in one action as defendants if:
>
> (A) any right to relief is asserted against them jointly, severally, or
> in the alternative with respect to or arising out of the same
> transaction, occurrence, or series of transactions or occurrences;
> and
>
> (B) any question of law or fact common to all defendants will arise
> in the action.

For parties seeking consolidation, Fed. R. Civ. P. 42(a) provides:

> If actions before the court involve a common question of law or
> fact, the court may:
>
> (1) join for hearing or trial any or all matters at issue in the actions;

---

[45] *Duncan v. Manager*, 397 F.3d 1300, 1315 (10th Cir. 2005) (quoting *Frank v. U.S. W., Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993)).

[46] D. Kan. Local R. 15.1.

[47] *See Painter v. Midwest Health, Inc.*, No. 19-2336, 2020 WL 5016878, at *6 (D. Kan. Aug. 25, 2020) ("When a motion to amend seeks to add parties that are not required, the court must consider Rule 20.").

(2) consolidate the actions; or

(3) issue any other orders to avoid unnecessary cost or delay.

"The decision whether to consolidate is left to the sound discretion of the trial court.  In exercising its discretion, the court should consider whether judicial efficiency is best served by consolidation."[48]  "The court generally weighs the saving of time and effort that consolidation would produce against any inconvenience, delay, or expense that consolidation would cause."[49] Courts also consider (1) whether the relief sought varies substantially between the two actions; (2) whether defendants are being sued in different capacities; and (3) what would be gained by consolidation and what injury would be suffered by failure to consolidate.[50]  The party requesting consolidation bears the burden of showing that the balance weighs in favor of consolidation.[51]

## C.   Analysis

The Court first considers whether amendment[52] is appropriate under Rules 15 and 20. Then, the Court considers whether consolidation with Case No. 5:24-cv-4042 is appropriate.  As described below, the Court denies leave to amend because the proposed Amended Complaint

---

[48] *McCoy v. Whirlpool Corp.*, No. 02–2064–KHV, 2003 WL 124531, at *2 (D. Kan. Jan. 12, 2003) (citations omitted).

[49] *C.T. v. Liberal Sch. Dist.*, 562 F. Supp. 2d 1324, 1346 (D. Kan. 2008) (citing 9A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2383, at 35–36 (3d ed. 2008)).

[50] *See Shump v. Balka*, 574 F.2d 1341, 1344 (10th Cir. 1978); *Lane v. United States*, Nos. 90–4228–S & 90–4229–S, 1991 WL 105204, at *1 (D. Kan. May 28, 1991).

[51] *Blagg v. Line*, Nos. 09–CV–0703, 09–CV–0708 & 10–CV–0502, 2010 WL 3893981, at *1 (N.D. Okla. Sept. 23, 2010) (citing *Bank of Montreal v. Eagle Assocs.*, 117 F.R.D. 530, 532 (S.D.N.Y. 1987)).

[52] As Defendants note, Plaintiff's proposed Amended Complaint cannot be considered a "supplement" because the additional factual allegations Plaintiff proposes occurred before the filing of the original Complaint.  *See* Fed. R. Civ. P. 15(d) ("[T]he court may . . . permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened *after* the date of the pleading to be supplemented." (emphasis added)).  In his reply, Plaintiff abandons his arguments on supplementation and argues only that amendment and consolidation are appropriate.  Thus, Plaintiff has forfeited his arguments on supplementation, and the Court considers only whether amendment is proper.

fails to comply with Local Rule 15.1 or Fed. R. Civ. P. 20(a)(2).  Plaintiff's request to

consolidate is moot because the Court has dismissed the original Complaint and denied leave to

amend.  It is also denied on the merits because the current Defendants should not be joined in

one action with the proposed additional Defendants.  Therefore, Plaintiff's motion to amend,

supplement, join additional parties, and consolidate is denied with prejudice.

### 1.     Whether Amendment is Appropriate

Plaintiff asserts that amendment is appropriate because this case is in its early stages and

no Scheduling Order has been entered.  Defendants argue that Plaintiff fails to satisfy Local Rule

15.1 because he "does not provide a basis for the amendment sought in the instant matter, he

simply asks to combine claims he is making in a separate lawsuit."[53]  Defendants assert that they

cannot properly challenge Plaintiff's motion under the traditional amendment factors because he

simply struck through the entire operative Complaint, and replaced it with exorbitant detail about

unrelated events.  Defendants also argue that the proposed Amended Complaint violates Rule 20.

The Court finds that the proposed Amended Complaint fails to comply with Local Rule 15.1, and

that the proposed additional Defendants should not be joined under Rule 20(a).  Therefore, the

Court denies Plaintiff's motion for leave to amend.

### a.     Local Rule 15.1 and Fed. R. Civ. P. 15

Plaintiff's motion to amend is 2.5 pages long and does not provide any argument as to

why amendment is proper.  Instead, the motion merely sets forth the legal standards in Rules

15(a) and (d), and asserts that Plaintiff seeks to raise additional claims against the City and add

Defendants.  The "redlined Complaint" attached to the motion is nothing more than a strike

---

[53] Doc. 22 at 3.

through of the entire document.[54]  Plaintiff asserts that his new counsel lacked access to the prior

counsel's Word document, and thus could not provide a traditional redlined Complaint as

required by Local Rule 15.1.  However, the same day that Defendants filed their response

complaining about the omission, Plaintiff's counsel filed a reply noting that he had obtained

access to the Word document, and attached a redlined version of the Complaint.  The properly

redlined version of the Complaint, though not a complete deletion of the entire original

Complaint, remains a near-total substitution.  Based on the sparse motion, the near-complete

redlining of the Complaint, and the lengthy proposed Amended Complaint, the Court agrees with

Defendants that they were deprived of a meaningful opportunity to challenge the appropriateness

of amendment under Local Rule 15.1.

It is evident that Plaintiff's primary purpose in seeking amendment is to allege facts and

claims relating to the felony arrest incident.  Almost 70 pages of the proposed Amended

Complaint relate solely to the felony arrest; only 5–6 pages address the homeless encampment

events.  Comparing the proposed Amended Complaint to the Complaint filed in Case No. 5:24-

4042,[55] the case Plaintiff seeks to consolidate with this one, reveals that Plaintiff seeks to

transform this action into a wholly distinct case.  About 70 pages of the proposed Amended

Complaint are reproduced, word-for-word, in the Complaint from the newly filed case, which

challenges only the felony arrest.  The same six claims are raised in both documents, the only

difference being that Plaintiff mentions the homeless encampment in claims 1, 2, and 5 of the

proposed Amended Complaint, but omits these references in the newly-filed case's Complaint.

---

[54] Doc. 20-2.

[55] Doc. 1, No. 5:24-cv-04042-DDC-RES.

Plaintiff concedes that, if amendment is granted, he will "contemplate" dismissing the newly

filed action as "partially duplicative."[56]

Plaintiff's tactics have forced the Court to spend significant time parsing through the

proposed Amended Complaint to locate the portions that deal with the instant action.  The

paucity of facts about the homeless encampment, and the near-identical nature of the proposed

Amended Complaint and the Complaint filed in the new action, suggest that Plaintiff does not

seek amendment in good faith.  This is not a scenario where a party retains new counsel who

seeks to switch up a litigation strategy.  This is an attempt to bring a wholly new case, based on

discrete events and against new Defendants, even though Plaintiff separately filed the new case.

Defendants are correct that such an attempt fails to comply with the Local Rules.

### b.        Joinder under Fed. R. Civ. P. 20(a)(2)

Defendants further argue that the proposed new Defendants and claims should not be

joined in this action because the facts and claims raised in the original Complaint are totally

distinct from those Plaintiff raises in the proposed Amended Complaint.  Thus, Defendants assert

that the proposed Amended Complaint fails to satisfy Rule 20 because there is no question of law

or fact common to all proposed Defendants.  Plaintiff responds that there is a common Defendant

connecting the two sets of facts—the City—and a common question about whether the City had

a policy to discriminate against Plaintiff's reporting activities.  The Court agrees with Defendants

and finds that the proposed additional Defendants should not be joined to this action.

The instant action raises questions of the First Amendment and the common law tort of

abuse of process; the proposed Amended Complaint raises questions of the First Amendment,

municipal liability, retaliation, the Fourth Amendment, and negligence.  The proposed Amended

---

[56] Doc. 20 at 3.

Complaint asserts no claim solely related to the homeless encampment incidents, and does not

raise a single claim against Thornton.[57]  Since the proposed Amended Complaint fails to assert a

claim against Thornton, it fails to satisfy Rule 20 because Plaintiff asserts no right to relief

against Thornton.  Similarly, there can be no common question of law or fact among all

Defendants without raising claims against all Defendants.  Therefore, neither Local Rule 15.1

nor Fed. R. Civ. P. 20(a) support granting leave to amend.  Plaintiff's request for leave to amend

is denied with prejudice because this is his second non-compliant request for leave to amend.

### 2.    Whether Consolidation is Appropriate

Plaintiff asserts that consolidation of this action with Case No. 5:24-cv-4042 is warranted

because it is in the interests of judicial efficiency.  Plaintiff argues that common evidence will be

presented in both the instant action and the newly filed action as to the City's discriminatory

policy against Plaintiff's reporting.  Defendants respond that consolidation is inappropriate

because the claims asserted against them are wholly distinct from the claims asserted against the

proposed additional Defendants.  Defendants argue that the presence of a common Defendant,

the City, does not warrant consolidating legally unrelated claims and events.

By filing a new action and seeking consolidation at the same time that he filed the instant

motion to amend, Plaintiff attempts to use consolidation as a backdoor to amendment.  This is

evident from the similarity of the proposed Amended Complaint and the Complaint filed in the

new case.  As described above, the Court denies Plaintiff's request for leave to amend and grants

Defendants' motion to dismiss.  Thus, this action cannot be consolidated with the newly-filed

case because it is subject to a dismissal order.  The Court would also deny consolidation on the

---

[57] *See* Doc. 20-3 at 52–73 (raising Claim 1 against the City, Claim 2 against all Defendant officers, Claim 3 against all Defendant officers not named Robinson or Richardson, Claim 4 against all Defendant officers not named Robinson or Richardson, Claim 5 against all Defendant officers, and Claim 6 against the City).

merits because, as described above, it would be improper under Rule 20 to join the proposed additional Defendants from the newly filed case to this action. Therefore, Plaintiff's request to consolidate this case with Case No. 5:24-cv-4042 is denied.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motion to Dismiss (Doc. 11) is **granted**.

**IT IS FURTHER ORDERED BY THE COURT** that Plaintiff's Motion to Amend, Supplement, Join Additional Parties, and Consolidate (Doc. 20) is **denied with prejudice**. This case is dismissed with prejudice. The Clerk shall enter judgment in favor of all Defendants and close the case.

**IT IS SO ORDERED.**

Dated: July 9, 2024

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE